UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES S. LONGSHORE,

              Plaintiff,

v.

MASON COUNTY, et al.,

              Defendants.

CASE NO. 3:18-cv-05069-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JULY 6, 2018

    This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4.

    Plaintiff Charles S. Longshore is a pretrial detainee who was temporarily housed as an intrastate boarder at the Stafford Creek Corrections Center ("SCCC") when he filed this case. He alleges that defendants Sinclair and Campbell violated his Fourteenth Amendment due process and equal protection rights, as well as his Sixth Amendment right to counsel, when they promulgated a Department of Corrections ("DOC") policy that houses pretrial detainees in administrative segregation, allegedly depriving them of resources allowed convicted prisoners

REPORT AND RECOMMENDATION - 1

1   and restricting their ability to contact their attorneys. However, plaintiff has not shown that the
2   policy placed him in housing that amounts to punishment in violation of due process, and he has
3   not shown that others similarly situated are being treated preferentially in violation of equal
4   protection. Further, he does not show that the distance of his transfer and his housing in
5   administrative segregation has caused a substantial interference with his ability to access
6   counsel. Therefore, the Court recommends defendants Sinclair and Campbell's motion to dismiss
7   be granted. The state claims against defendants Sinclair and Campbell, as well as the federal and
8   state claims against the remaining defendants, should move forward.

9   In addition, plaintiff requests that the Court certify three state law questions to the
10  Washington Supreme Court. However, because the questions of state law explicitly follow
11  federal standards, the Washington Supreme Court is in no better a position to answer them than
12  this Court, and so certification is inappropriate. Therefore, the Court recommends that plaintiff's
13  motion to certify be denied.

**BACKGROUND and PROCEDURAL HISTORY**

15  Plaintiff initially filed this action in January of 2018. Dkt. 1. He states that, at the time he
16  filed the complaint, he was a pretrial detainee who had been transferred to the custody of the
17  DOC pursuant to an intrastate compact allowing county jails to transfer pretrial detainees out of
18  their custody while retaining jurisdiction over them. *See* Dkt. 7. He alleges that defendants
19  Sinclair and Campbell violated his Fourteenth Amendment right to due process because they
20  promulgated a policy that placed him, as a pretrial detainee, in administrative segregation when
21  the DOC took custody of him. *Id*. at pp. 11-12. He further alleges that defendants Sinclair and
22  Campbell violated his Fourteenth Amendment equal protection rights because the policy placed
23  him in more restrictive confinement than convicted prisoners, as well as other pretrial detainees

still in custody at county jails. *Id*. at pp. 13-14. He finally alleges that the policy violates his Sixth Amendment guarantee to effective counsel because he is being held in custody farther from his attorney than if he was being held at the county jail, and because his placement in administrative segregation limits his contact with his attorney. *Id*. at p. 14.[1]

After serving the complaint (Dkt. 9), defendants Sinclair and Campbell filed a motion to dismiss (Dkt. 29). They argue that plaintiff has not shown that the DOC policy violated his Fourteenth Amendment rights because his housing in administrative segregation is not punitive and because he has not shown that he is being discriminated against in violation of equal protection. *Id*. They also argue that plaintiff's right to counsel has not been violated because the policy specifically provides that plaintiff be provided adequate access to his attorney. *Id*. Finally, defendants Sinclair and Campbell have included a motion to strike, requesting that the Court strike plaintiff's allegations that he was forbidden visitors when he was housed in DOC custody. *Id*.

The other defendants in this case have filed an answer to plaintiff's complaint rather than a motion to dismiss. Dkt. 32.

Plaintiff has also filed a motion to certify questions to the Washington Supreme Court. Dkt. 34. He argues that the three state grounds he raises against defendants Sinclair and Campbell have not been adequately illuminated by state court decisions, and so should be certified to the Washington Supreme Court for clarification. *Id*. Defendants Sinclair and Campbell oppose the motion, arguing that, if the District Court grants the motion to dismiss as to

---

[1] Plaintiff includes other allegations against several county defendants, but the Court does not summarize them here because the motion to dismiss before the Court pertains only to defendants Sinclair and Campbell. *See* Dkt. 29.

the federal claims against them, the state law claims will have no place in this suit and so certification to the Washington Supreme Court would be unnecessary. Dkt. 37.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Id.*; *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Ballistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

While the Court must accept all the allegations contained in the Complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* When a plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner,* 404 US 519 (1972), *reh'g denied,* 405 U.S. 948 (1972); *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc) (plaintiff should be afforded the "benefit of any doubt").

REPORT AND RECOMMENDATION - 4

While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (*quoting Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). The court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## DISCUSSION

### I. Defendants' Motion to Strike

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike are generally disfavored. *See Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). A matter will not be stricken as impertinent or scandalous merely because a party challenges its factual basis. *See Brokke v. Stauffer Cehmical Co.*, 703 F. Supp. 215, 223 (D. Conn. 1988); *Kinee v. Abraham Lincoln Fedel Sv. And Loan Ass'n*, 365 F. Supp. 975, 982 (E.D. Penn. 1973). Rather, "[a]n 'impertinent' matter consists of statements that do not pertain and are unnecessary to the issues in question." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citing *Fantasy, Inc. v. Fogety*, 984 F.2d 1524, 1527 (9th Cir. 1993). "A 'scandalous' matter improperly casts a derogatory light on someone, usually a party. *Id*.

Defendants have requested the Court strike plaintiff's allegations that he was not allowed any visitors when in segregation because "[he] was able to have visitors at SCCC, and plaintiff's Mother visited him on January 28, 2018." Dkt. 36 at 2 (citing Dkt. 25 at ¶ 8). However, the fact that plaintiff's statement in his allegation is contradicted by defendants' evidence is merely a factual dispute. Plaintiff's statements do in fact pertain to his constitutional allegations and he has not cast a derogatory light on defendants any more than any other plaintiff in a civil action.

1  Plaintiff's statements are not impertinent or scandalous as defendant suggests, and so the Court
2  recommends not striking them.

3        **II.**      **Fourteenth Amendment Due Process**

4        Because pretrial detainees, unlike prisoners, have not been convicted of any crimes for
5  which the state has imposed a punishment, the Fourteenth Amendment protects them from
6  undergoing punishment during their detention. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).
7  "Pretrial detainees have a substantive due process right against restrictions that amount to
8  punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002), *cert. denied*, 538 U.S.
9  1047. "Absent a showing of an express intent to punish on the part of detention facility officials,
10 . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate
11 governmental objective, it does not, without more, amount to 'punishment.'" *Wolfish*, 441 U.S.
12 at 538-39; *see also Martucci v. Johnson*, 944 F.2d 291, 294-95 (6th Cir. 1991) (pretrial detainee
13 placed in segregation for administrative reasons did not violate due process).

14       Plaintiff alleges that defendants Sinclair and Campbell violated plaintiff's rights because
15 they promulgated a policy that requires housing pretrial detainees in segregation instead of the
16 general population. Dkt. 7. He claims that he had no visitation, restricted phone access, and was
17 provided only limited access to facilities outside his cell. *Id*. at p. 9. However, plaintiff has made
18 no allegation that these conditions are specifically designed to punish him. Rather, he alleges
19 that, because he is a pretrial detainee, the conditions amount to punishment. Thus, he must show
20 that, if the policy has a legitimate government interest, there is something more to constitute
21 "punishment."

22       The policy plaintiff challenges was designed to "maximize existing resources and provide
23 adequate housing and/or health care for certain offenders with . . . safety and security issues that
24

1  cannot be reasonably addressed by the sending (i.e., city, county, or state) jurisdictions." Dkt. 7,

2  p. 56 (DOC Policy 330.605). It also provides that pretrial detainees will either be held in

3  administrative segregation or, if they have medical or mental health needs, in an appropriate care

4  facility. *Id*. at p. 60. On its face, this policy is not punitive. Rather, it serves the governmental

5  interest of effectively using resources and ensuring that pretrial detainees with special needs will

6  be housed appropriately.

7  Further, the policy requires that pretrial detainees be provided "the opportunity to access

8  services similar to those provided to Department offenders housed with the [pretrial detainees],"

9  and that they be offered "the same programming and treatment opportunities as similarly situated

10 Department offenders." Dkt. 7 at p. 59. The policy specifically provides "[a]mple access to

11 consult privately with counsel" and meaningful access to other legal resources and the judicial

12 process. Dkt. 7 at p. 60. Any deprivation that plaintiff alleges would be in violation of the policy,

13 rather than a result of it. The policy has a legitimate government interest in that it aims to

14 optimize resources and ensure pretrial detainees are adequately housed, and the policy itself

15 provides for access to telephones, counsel, and other resources similar to other prisoners.

16 Therefore, plaintiff has not shown that the policy amounts to punishment in violation of due

17 process and the Court recommends that defendants' motion to dismiss be granted as to this

18 claim.

19     **III.    Fourteenth Amendment Equal Protection**

20 The Fourteenth Amendment's equal protection clause "is essentially a direction that all

21 persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*,

22 473 U.S. 432, 439 (1985). To assert a claim under equal protection, plaintiff must show that he

23 was similarly situated to other defendants who received preferential treatment. *See Fraley v.*

24

1  *Bureau of Prison*, 1 F.3d 924, 926 (9th Cir. 1993). Thus, plaintiff must show: 1) he is a member

2  of a protected class; and 2) he was being intentionally treated differently from a similarly

3  situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v. Rhay*, 315 F.2d

4  193, 198 (9th Cir. 1963). For equal protection purposes, a "protected class" is a group

5  "comprised of similarly situated persons so that the factor motivating the alleged discrimination

6  can be identified." *Thornton*, 425 F.3d at 1167 (citing *Freeman v. City of Santa Ana*, 68 F.3dc

7  1180, 1187 (9th Cir. 1995).  Hence, for plaintiff to prevail on an Equal Protection Clause claim,

8  plaintiff must not only show differential treatment by the trial court, but also that the trial court

9  intentionally or purposefully discriminated against him.

10      Here, plaintiff has alleged that he is being treated differently from other prisoners housed

11  at DOC facilities, and that he is being treated differently from other pretrial detainees in county

12  jails. However, he has not shown that he is in a protected class. First, as plaintiff points out,

13  pretrial detainees and prisoners are different because pretrial detainees have not yet been

14  convicted of a crime. Thus, insofar as he compares his treatment to those of other prisoners on

15  equal protection grounds, he is not similarly situated with the convicted prisoners such to give

16  rise to an equal protection claim.

17      Next, plaintiff's comparison to other pretrial detainees is insufficient to raise a legal

18  claim.. First, he provides nothing in his complaint except the bald assertion that he is treated

19  differently from other pretrial detainees. *See* Dkt. 7, p. 13. He provides no explanation of the

20  difference except to say that he is now housed in a prison, rather than a jail. *Id*. Though he may

21  be similarly situated to some pretrial detainees, he has not effectively shown how he is treated

22  differently in violation of equal protection. Second, insofar as plaintiff pleads that he is being

23  housed more restrictively than other pretrial detainees, this would have been true even if plaintiff

24

had not been transferred. As the exhibits plaintiff submitted indicate, his risk score would have forced the Mason County Jail to house him in involuntary protective custody or disciplinary segregation. *Id.* at 51. Thus, again, other pretrial detainees with lower risk scores and consequently fewer restrictions on their housing are not similarly situated so as to plead a violation of equal protection.

Finally, as noted above, the only alleged deprivation the DOC policy condones is plaintiff's housing in administrative segregation – a deprivation that does not violate his constitutional rights. All his other alleged deprivations are in violation of, rather than accordance, with the policy. Because plaintiff cannot show that others similarly situated were provided preferential treatment, he has not stated a claim for which relief can be granted. Therefore, the Court recommends that defendants' motion to dismiss be granted as to this claim.

**IV.     Sixth Amendment Right to Counsel**

"'The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled.'" *United States v. Beltran-Moreno*, 556 F.3d 913, 918 (9th Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)) (emphasis omitted). The Ninth Circuit offers little guidance on whether a pretrial detainee's transfer to a new facility may deprive him of his right to counsel. In *United States v. Mayo*, 646 F.2d 369 (1981), a defendant was convicted and imprisoned in California. However, while incarcerated on the first conviction and after an indictment was entered on a different charge, he was transferred to Arizona, allegedly making it difficult to confer with his San Francisco-based attorney. *Id.* at 373. The Ninth Circuit found that, in order to prove a Sixth Amendment violation:

1    "[A defendant] must at least show that he was prejudiced by the inter-prison transfer
     . . . . [Here, he] has [not] shown that the Government denied him access to his
2    counsel while he was incarcerated in [Arizona]."

3    *Id.* (citing *Cooper v. Fitzharris*, 586 F.2d 1324, 1330-31 (9th Cir. 1978) (en banc), *cert. denied*,

4    440 U.S. 974 (1979)).

5          Other circuits have also held that a plaintiff must show prejudice, or at the least

6    "substantial interference," with access to counsel to succeed on a Sixth Amendment claim. *See*

7    *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (requiring evidence of actual prejudice);

8    *United States v. Lyons*, 898 F.2d 210, 216 n.6 (1st Cir. 1990) (requiring evidence of actual

9    prejudice); *Cobb v. Aytch*, 642 F.2d 946, 959-60 (3rd Cir. 1981) (upholding injunctive relief after

10   finding "substantial interference").

11         Here, plaintiff states that the distance he was transferred denied him access to counsel. He

12   states that he is being housed "far away from the courts and counsel" (Dkt. 7 at 14) and that he

13   now has very restricted access to the telephone (*id*. at p.9). Plaintiff's exhibits indicate that his

14   telephone access is limited and, when meeting with his attorney, there is a pane of glass between

15   them, making the examination of documents difficult. Dkt. 33, p. 13. However, plaintiff has not

16   alleged how these conditions substantially interfered or actually prejudiced his trial. He has not

17   stated, for instance, whether he has missed deadlines, whether his trial has been continued, or

18   whether his attorney is unable to make the trip to consult with him. Indeed, plaintiff has indicated

19   that his attorney has been in contact and has been defending him in his criminal proceeding.

20   Plaintiff has not sufficiently alleged that his housing has substantially interfered with his right to

21   access his counsel or his counsel's ability to effectively represent him.

22         Further, plaintiff relies on *Cobb v. Aytch*, 643 F.2d 946 (3rd Cir. 1981), to support his

23   claim that the distance he was transferred is sufficient to plead "substantial interference" with his

24

1  right to access counsel. In that case, a group of prisoners, including pretrial detainees, were

2  transported, without notice to their families or attorneys, to five correctional facilities between 90

3  and 300 miles away. *Id*. at 949. As a result of the transfer, a majority of pretrial detainees were

4  denied a pretrial conference with their attorneys, some detainees missed parole hearings and

5  court appearances, and 25% of the transferees' cases had to be continued. *Id*. at 951. "Due to

6  continuances and the prolongation of the pretrial period some transferred inmates spent more

7  time in pretrial incarceration than the eventual length of their sentences." *Id*. The Third Circuit

8  found that the transfers had caused "substantial interference" with their right to effective

9  assistance. *Id*. at 960.

10  In contrast, plaintiff here has not alleged any such type of substantial interference.

11  Plaintiff merely alleges that he is now farther from his attorney than he was when he was in

12  Mason County. That is not sufficient.

13  Finally, as noted in previous sections, plaintiff is challenging DOC policy. However, the

14  policy itself provides pretrial detainees "[a]mple access to consult privately with counsel." Dkt.

15  7, p. 60. Thus, even if plaintiff could show substantial interference or actual prejudice, it is not

16  the policy that caused it. Because plaintiff cannot show that the policy created a substantial

17  interference with his ability to consult with his attorney, plaintiff has not shown his Sixth

18  Amendment protections were violated. Therefore, the Court recommends granting defendants'

19  motion to dismiss as to this claim.

20  **V.    Motion to Certify Questions to Washington Supreme Court**

21  Plaintiff has requested that the Court certify three questions to the Washington Supreme

22  Court. Dkt. 34. "Certification of questions of state law to the highest court of the state 'provides

23  a means to obtain authoritative answers to unclear questions of state law.'" *Micomonaco v. State*

24

*of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995) (quoting *Toner v. Lederle Lab.*, 779 F.2d 1429, 1432 (9th Cir. 1986)). Washington statute provides the standard for certifying a question to the Washington Supreme Court:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

RCW 2.60.020.

The decision to certify a question rests in the discretion of the district court. *Micomonaco*, 45 F.3d at 322. Although certifying a question may be in the interest of judicial economy, the "mere difficulty in ascertaining local law is no excuse" for certifying such questions. *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory"). If the state court is in no better a position than the federal court to answer the state law question, certification is inappropriate. *Micomonaco*, 45 F.3d at 322.

Defendants Sinclair and Campbell oppose plaintiff's motion, stating that, because the state law claims rely on the federal law claims, they would have no place in the proceeding if the District Court grants their motion to dismiss. Dkt. 37. However, no defendants have explicitly moved for the dismissal of the state law claims against defendants Sinclair and Campbell. *See* Dkt.

Here, plaintiff requests that the following three questions be certified to the Washington Supreme Court:

> (1) Whether or not transferring a pretrial detainee to a state prison facility prior to an [adjudication] of guilt constitutes punishment under Wash. Const. Article I, section 3 due process clause, when that transfer results in a[] pretrial detainee

      being housed in a maximum security unit me[a]nt to house violent convicted prisoners?

(2) Whether or not the conditions of confinement imposed on a pretrial detainee housed in a state prison maximum security unit amount to punishment prior to an adjudication of guilt banned by Wash. Const. Article I, section 3 due process clause?

(3) Whether or not transferring a pretrial detainee to a distant facility (approximately 90 miles away from defence [sic] attorney and 50+ miles away from court) violate[s] Wash. Const. Article I, section 22 right to counsel and effective representation when that transfer results in a restriction housing placement that interferes with attorney-clients ability to communicate?

Dkt. 34, 1-2.

      It is true that the Washington Supreme Court has not specifically addressed these issues. However, when making determinations about Washington State's constitutional due process guarantees, the Washington Supreme Court's analysis "follows that of the federal constitution because the state constitution does not afford broader due process protection than the Fourteenth Amendment to the United States Constitution." *In re Estate of Hambleton*, 181 Wash.2d 802, 823 (2014). If the Court certified plaintiff's first two questions to the Washington Supreme Court, that court would utilize the same analysis as this Court. Thus, it cannot be said that the state law is unclear or that the Washington Supreme Court would be in a better position to answer plaintiff's questions than this Court would.

      Similarly, "[t]he right to counsel guaranteed in article 1, section 22 of the Washington Constitution provides the same protection as the Sixth Amendment. *State v. Hampton*, 182 Wash. App. 805, 831 (2014), *rev'd on other grounds*, 184 Wash. 2d 656, 361 P.3d 734 (2015). Put another way, "[t]he right to counsel under article I, section 22 (amendment 10) of the Washington Constitution does not provide more protection than the Sixth Amendment." *State v. Corn*, 95 Wash. App. 41, 62 (1999) (citing *State v. Earls*, 116 Wash.2d 364, 374 n.5 (1991).

1    Again, in answering the plaintiff's third question, the Washington Supreme Court would apply a

2    standard identical to the standard applied by this Court. Thus, though the state's highest court has

3    not ruled on plaintiff's particularized issues, the Washington Supreme Court is also not in a

4    better position to do so than this Court. Therefore, the Court recommends declining to certify any

5    of plaintiff's three questions.

## CONCLUSION

For the reasons set forth above, the Court recommends that defendant Sinclair and Campbell's motion to strike (Dkt. 36) be denied, motion to dismiss (Dkt. 29) be granted, and plaintiff's motion to certify state law questions to the Washington Supreme Court (Dkt. 34) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 6, 2018** as noted in the caption.

Dated this 13th day of June, 2018.

_____

J. Richard Creatura
United States Magistrate Judge